# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 27, 2017
NOT TO BE PUBLISHED

Supreme Court of Kentucky

2016-SC-000137-DG

FINAL

DATE 5/18/17 Kim Redmon, DC

COMMONWEALTH OF KENTUCKY                                   APPELLANT

ON REVIEW FROM COURT OF APPEALS

V.                       CASE NO. 2014-CA-1307-MR
McLEAN CIRCUIT COURT NO. 03-CR-00056

JOHN J. HUGHES                                              APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**REVERSING**

In 2003, John J. Hughes, Jr. ("Hughes") pled guilty to four felonies:

Murder, Tampering with Physical Evidence, and Forgery in the Second Degree

(two counts), after bludgeoning his father, John J. Hughes, Sr., to death with a

baseball bat and disposing of the body. In accordance with his guilty plea,

Hughes received an aggregate twenty-year sentence. Over the course of the

next ten years, Hughes filed numerous post-conviction motions seeking to set

aside his guilty plea, arguing in each motion that he should have received an

evidentiary hearing pursuant to KRS[1] 439.3401(5) to determine whether he

was exempt from the "violent offender statute," and accordingly, not required to

serve 85% of his sentence before eligibility for parole. KRS 439.3401(5).

exempts from the 85% requirement a person who has been determined by a

---

[1] Kentucky Revised Statutes.

court to have been a victim of domestic violence or abuse pursuant to KRS 533.060 with regard to the offenses involving the death of the victim or serious physical injury to the victim. Hughes claims that he killed his father as a result of suffering physical and mental abuse at the hands of his father throughout his life, and that this mitigation evidence should have been presented at an evidentiary hearing in accordance with KRS 439.3401(5).

Two Court of Appeals panels have reviewed the trial court's denial of Hughes's successive RCr[2] 11.42 motions raising the issue of an evidentiary hearing pursuant to KRS 439.3401(5), and have affirmed. Recently, a third Court of Appeals panel reversed the trial court's denial of Hughes's CR[3] 60.02 motion, and remanded the case for an evidentiary hearing pursuant to KRS 439.3401 to determine if Hughes qualified for the section (5) exemption.

We granted the Commonwealth's motion for discretionary review to examine whether the Court of Appeals erred by reversing and remanding this case for an evidentiary hearing. After thorough review, we conclude that the Court of Appeals did err, by engaging in retrospective fact-finding, and by adjudicating an issue that had already been conclusively resolved. Accordingly, we reverse the Court of Appeals and reinstate the trial court's order denying Hughes's CR 60.02 motion.

---

[2] Kentucky Rules of Criminal Procedure.
[3] Kentucky Rules of Civil Procedure.

2

## I. FACTUAL AND PROCEDURAL HISTORY.

In 2003, after bludgeoning his father, John J. Hughes, Sr., to death with a baseball bat, Hughes wrapped his father's body in plastic and dropped it into a well on his property. Hughes later confessed to these actions after police began investigating the disappearance of his father. In his confession, Hughes told police that his father had sexually abused him as a child, from birth until he was fourteen, and then mentally abused him his entire adult life.[4] Hughes told police that he had gone to his father's house that day to confront him about the abuse; he woke his father up from a nap to talk, but his father became irate and threatened to rape him. Hughes told police that he "lost it," grabbed a baseball bat lying near the couch and began beating his father over the head.

During the investigation, police officers found evidence of pedophilia in John J. Hughes, Sr.'s possessions, including photographs of young males, some of which may have been Hughes. In the Uniform Offense Report, the officers noted that "John J. Hughes, Jr. could have been the victim of sexual abuse by his father, and killed him due to this fact." The report further states that officers "advised John Jr. that he might be the victim of sexual abuse." The Presentence Investigation Report contains Hughes's allegations of sexual and physical abuse against his father.

---

[4] Hughes was twenty-seven years old when he killed his father, and living with his girlfriend at that time.

3

Hughes filed, *pro se*, his first RCr 11.42 motion in 2004, alleging that his trial counsel had rendered ineffective assistance by failing to move for an evidentiary hearing to determine if Hughes fit the requirements for the exemption from KRS 439.3401. In his motion, Hughes claimed that he killed his father as a result of his father having physically and mentally abused him throughout his life, and argued that his trial counsel was ineffective by failing to investigate the alleged sexual and physical abuse, failing to prepare a defense and coercing him into pleading guilty. The trial court denied Hughes's RCr 11.42 motion, holding that the record refuted any claims of ineffective assistance. Hughes appealed; the Court of Appeals affirmed.[5] Hughes did not seek discretionary review of the Court of Appeals' decision.

In 2008, Hughes filed another motion pursuant to RCr 11.42, now represented by counsel, seeking an evidentiary hearing to determine whether he qualified for the KRS 439.3401(5) exemption. The trial court denied his motion as successive and untimely. Hughes did not appeal. In 2012, Hughes, *pro se*, filed again for an evidentiary hearing pursuant to KRS 439.3401(5), which the trial court denied. Hughes appealed, the Court of Appeals affirmed, deeming Hughes's motion successive and precluded by the law of the case doctrine.[6] Again, Hughes did not seek discretionary review of the Court of Appeals' decision.

---

[5] *Hughes v. Commonwealth*, No. 2005-CA-000416-MR, 2006 WL 73738 (Ky. App. Jan. 13, 2006) (unpublished) (hereinafter *Hughes I*).

[6] *Hughes v. Commonwealth*, No. 2013-CA-000068-MR, 2013 WL 5777142 (Ky. App. Oct. 25, 2013) (unpublished) (hereinafter *Hughes II*).

In 2014, Hughes filed a motion pursuant to CR 60.02(e)-(f), seeking to modify his judgment, and asserting that his guilty plea was involuntary, and therefore invalid, because he was not afforded the opportunity to present mitigation evidence under KRS 439.3401(5). Hughes also asserted that he had acted under extreme emotional distress, was actually innocent pursuant to the "castle doctrine," and that his sentence was disproportionate.[7] The trial court denied the motion, noting that Hughes had already presented the KRS 439.3401 claims in prior post-conviction motions without success, and that the issue was, or could have been, raised in other proceedings and thus was not properly before the court via CR 60.02. Hughes appealed. On appeal, the Commonwealth asserted two procedural bars: 1) Hughes's 60.02 motion was not filed in the required reasonable time, and 2) the law of the case doctrine and principles of res judicata bar re-litigation of this issue.

On February 19, 2016, the instant Court of Appeals panel reversed the trial court, and remanded this case for an evidentiary hearing on Hughes's claims of ineffective assistance of counsel for allegedly failing to pursue an exemption pursuant to KRS 439.3401(5), as well as for an evidentiary hearing

---

[7] Hughes claims actual innocence pursuant to the "castle doctrine," but cites KRS 503.050. KRS 503.055 actually pertains to the "castle doctrine." *Jones v. Commonwealth,* 366 S.W.3d 376, 379 (Ky. 2011). The Court of Appeals found the "castle doctrine" inapplicable to this case, and therefore reviewed Hughes's claim pursuant to KRS 503.050(1), which justifies the use of deadly force upon another in certain circumstances involving self-defense. Since the Court of Appeals reversed and remanded on the issues of ineffective assistance of counsel, it declined to review Hughes's claim that his sentence was disproportionate to sentences that other criminal defendants who were sentenced to lesser included offenses of murder have received.

regarding whether Hughes received ineffective assistance due to his counsel's failure to argue self-defense on Hughes's behalf.[8] The Commonwealth petitioned this Court for discretionary review, which we granted.

## II. ANALYSIS.

Hughes's CR 60.02 motion is procedurally barred, both as untimely and successive. Hughes has raised the issue of his entitlement to a hearing pursuant to KRS 439.3401(5) in every post-conviction motion he has filed, including the instant CR 60.02 motion. Kentucky law does not permit redundant, successive post-conviction motions or the re-litigation of claims already conclusively resolved.

Our rules governing review of a trial court's final judgment in a criminal case are meant to be organized and complete. As this Court has stated,

> The structure provided in Kentucky for attacking the final judgment of a trial court in a criminal case is not haphazard and overlapping, but is organized and complete. That structure is set out in the rules related to direct appeals, in RCr 11.42, and *thereafter* in CR 60.02.

*Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983). "CR 60.02 . . . is for relief that is not available by direct appeal and not available under RCr 11.42. The movant must demonstrate why he is entitled to this special, extraordinary relief." *Id.* Where the alleged unconstitutional act could have been raised in an

---

[8] *Hughes v. Commonwealth*, No. 2014-CA-001307-MR, 2016 WL 675952 (Ky. App. Feb. 19, 2016) (unpublished) (hereinafter *Hughes III*).

6

earlier proceeding, this court has refused to grant CR 60.02 relief. *See id.* at 857.

> A defendant who is in custody under sentence . . . is required to avail himself of RCr 11.42 as to any ground of which he is aware, or should be aware, during the period when the remedy is available to him. Civil Rule 60.02 is not intended merely as an additional opportunity to relitigate the same issues which could "reasonably have been presented" by direct appeal or RCr 11.42 proceedings.

*McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997) (citations omitted). "Indeed, RCr 11.42(3) makes clear that the movant shall, in his RCr 11.42 petition, state all grounds for holding the sentence invalid of which the movant has knowledge. Thus, final disposition of a movant's RCr 11.42 motion shall conclude all issues which could reasonably have been presented in the same proceeding." *Foley v. Commonwealth*, 425 S.W.3d 880, 884 (Ky. 2014) (citations omitted). The importance of finality in criminal cases is firmly rooted in Kentucky jurisprudence.

In his CR 60.02 motion, Hughes attempts to re-litigate his previous RCr 11.42 claims – claims that could have been, and were, already raised. The current Court of Appeals panel reasoned that

> [r]egarding whether Hughes brought these claims within a reasonable time, we note that Hughes initially brought this claim in his first RCr 11.42 motion, which was timely filed approximately one year after his judgment became final, and through no fault of his own, his motion was denied without a hearing and this Court erred in its decision on appeal. Because of these procedural problems, we conclude that his

7

> current claim was filed within a reasonable time under the facts of this case.[9]

However, this reasoning erroneously conflates an alleged error in dispensing with a prior RCr 11.42 motion with the extraordinary relief of CR 60.02. Hughes's CR 60.02 motion, filed over ten years after his judgment became final, cannot be deemed to have been brought within a reasonable time merely because the current panel of the Court of Appeals disagrees with prior Court of Appeals' opinions on the merits of Hughes's successive RCr 11.42 claims. Indeed, the Court of Appeals saw fit to construe Hughes's CR 60.02 motion as that of an ineffective assistance of counsel motion under RCr 11.42, despite the passage of over a decade since Hughes's ineffective assistance of counsel claim was first rejected on appeal in 2006. The instant Court of Appeals panel ultimately concluded that "Hughes has put forth precisely what the law requires to have his allegations of ineffective assistance of counsel reviewed via an evidentiary hearing, as his allegations cannot be refuted on the written record."[10] This reasoning, and the Court's conclusion, is misplaced. As stated above, "CR 60.02 . . . is for relief that is not available by direct appeal and not available under RCr 11.42." *Gross*, 648 S.W.2d at 856. Hughes's current CR 60.02 motion is not subject to the same analysis as that of an RCr 11.42 motion.

---

[9] *Hughes III*, No. 2014-CA-001307-MR at *16.

[10] *Hughes III*, No. 2014-CA-001307-MR at *22.

The issue of Hughes's entitlement to an evidentiary hearing under KRS 439.3401 is also statutorily barred. Hughes raised the KRS 439.3401 exception in his first post-conviction RCr 11.42 motion, and sought exemption from the violent offender act. The trial court denied that motion, and Hughes did not appeal. Pursuant to KRS 439.3402, which governs exemptions from KRS 439.3401 for victims of domestic violence and abuse, section (7) explicitly provides that "[o]nly one (1) motion under this section may be filed by the same offender regarding the same conviction." Hughes raised, and the trial court and Court of Appeals ruled on, the issue of a KRS 439.3401(5) evidentiary hearing numerous times. Statutorily, Hughes was not permitted to raise this issue more than once.

Further, Hughes's CR 60.02 claims are precluded by the law of the case doctrine.

> The law of the case doctrine is an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been. The doctrine is predicated upon the principle of finality. The law of the case rule is a salutary rule, grounded on convenience, experience and reason. It has been often said that it would be intolerable if matters once litigated and determined finally could be relitigated between the same parties, for otherwise litigation would be interminable and a judgment supposed to finally settle the rights of the parties would be only a starting point for new litigation.

*Brooks v. Lexington-Fayette Urban Cnty Hous. Auth.*, 244 S.W.3d 747, 751 (Ky. App. 2007) (internal citations and quotations omitted).

9

In other words, the law of the case doctrine and res judicata "precludes an appellate court from reviewing not just prior appellate rulings, but decisions of the trial court which could have been but were not challenged in a prior appeal." *Brown v. Commonwealth,* 313 S.W.3d 577, 610 (Ky. 2010). The rules protect "the important interest litigants have in finality, by guarding against the endless reopening of already decided questions, and the equally important interest courts have in judicial economy, by preventing the drain on judicial resources that would result if previous decisions were routinely subject to reconsideration." *Id.*

The current Court of Appeals panel imprudently rejected longstanding precedent in re-opening issues already decided. Indeed, the Court of Appeals acknowledged it was "departing from the well-worn path of the law of the case doctrine,"[11] but nevertheless determined that this case was a rare one in which applying the law of the case would result in a manifest injustice to Hughes. To justify its decision, the Court of Appeals cited to *Davidson v. Castner-Knott Dry Goods Co.,* 202 S.W.3d 597, 602 (Ky. App. 2006), for the notion that even if a prior ruling is the law of the case, a court "may reexamine an earlier ruling and rescind it if [the court] has a reasonable conviction that it was wrong and it would not cause undue prejudice to the party that benefited from it." However, the issue presented in *Davidson* was whether a trial judge was permitted to reconsider its previous grant of summary judgment. The holding in *Davidson*

---

[11] *Hughes III*, No. 2014-CA-001307-MR at *21.

10

has no bearing on the procedural posture of Hughes's case and is wholly inapplicable.

Manifest injustice is defined as "'an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds.'" *Nichols v. Commonwealth*, 142 S.W.3d 683, 691 (Ky. 2004) (quoting BLACK'S LAW DICTIONARY 974 (7th ed. 1999)). We disagree with the Court of Appeals that each prior court "overlooked" information in the record showing that counsel should have been aware of Hughes's possible mitigation evidence of self-defense and prior sexual abuse. On the first appeal, the Court of Appeals engaged in a thorough review of this exact claim, holding that "as to Hughes's claim that his attorney failed to advise him of the 85% requirement of the violent offender statute, we find no constitutional violation even if his attorney failed to so inform him."[12] The first Court of Appeals panel further stated that, with respect to the separate issue of whether Hughes's counsel was ineffective for failing to move for an evidentiary hearing on the exemption from the violent offender statute, Hughes did not make the allegation that his attorney knew or

---

[12] *Hughes I*, 2006 WL 73738, at *2. The Court of Appeals in *Hughes I* relied on *Turner v. Commonwealth*, 647 S.W.2d 500 (Ky. App. 1982), which held that a guilty plea is not involuntary or invalid because defendant's counsel did not inform the defendant of parole eligibility guidelines. That holding reflected the state of Kentucky law in 2006. More recent cases, however, likely would have dictated a different result. *See e.g. Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed. 2d 284 (2010) (holding that counsel's failure to advise criminal defendant of immigration consequences of guilty plea constituted ineffective assistance of counsel).

11

should have known that Hughes was the victim of domestic violence or abuse prior to advising him on the guilty plea.[13]  One judge, however, explicitly dissented with the Court of Appeals' majority opinion, stating

> I fully agree with the majority that the record clearly refutes Hughes' claims of ineffective assistance of counsel with respect to his counsel's representation regarding his guilty pleas.  I would, however, remand this matter to the trial court for an evidentiary hearing concerning counsel's decision not to pursue, on Hughes behalf, an exemption from the application of the violent offender act.[14]

Clearly, the issue of Hughes's entitlement to a hearing under KRS 439.3401(5) was presented to, and adjudicated by, the first Court of Appeals panel.

The current Court of Appeals panel therefore erred by embarking on an extensive fact-finding mission and re-litigating the issue.  The Court of Appeals also erred by granting relief that Hughes did not seek.  Hughes's CR 60.02 motion asked that the court amend his sentence proportionate to Second-Degree Manslaughter, or Reckless Homicide, or, in the alternative, to find him to be a victim of domestic violence exempting him from the violent offender statute and allow him to receive statutory good time credit and an earlier parole eligibility date.  Hughes's CR 60.02 motion did not request that the court remand the case for an evidentiary hearing and/or a new penalty phase proceeding.

---

[13] *Hughes I*, 2006 WL 73738, at *2.
[14] *Hughes I*, 2006 WL 73738, at *3.

We further find that no manifest injustice occurred which might support reversal. Hughes pled guilty to four felonies, including murder, and received an aggregate twenty-year sentence. As noted by the first Court of Appeals panel, it would seem that Hughes's counsel was actually highly effective since he negotiated a total sentence of twenty years for all four felonies.[15] Thus, we are unable to say that Hughes's sentence resulted in manifest injustice.

## III. CONCLUSION.

For the foregoing reasons, we reverse the Court of Appeals. Hughes's allegations of ineffective assistance of counsel were repeatedly and properly rejected by the trial court and two prior panels of the Court of Appeals and are procedurally barred from being re-litigated. Furthermore, no manifest injustice resulted from the denial of Hughes's request for an evidentiary hearing regarding a possible exemption from the violent offender act that would warrant a dispensation from the law of the case doctrine.

All sitting. All concur.

---

[15] It appears that in a separate case, 2003-CR-55, Hughes was charged with Manufacturing Methamphetamine and Knowingly Possessing Anhydrous Ammonia with Apparent Intent to Manufacture Methamphetamine. Hughes's trial counsel apparently succeeded in negotiating an aggregate twenty-year sentence for him for these charges in conjunction with the four felonies discussed herein.

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General


COUNSEL FOR APPELLEE:

Heather Hogsdon
Assistant Public Advocate
Department of Advocacy